A05A1842. SELLERS v. SELLERS et al.

(627 SE2d 882)

ANDREWS, Presiding Judge.

Misty Sellers, the biological mother of J. S., appeals from the trial court's order terminating her parental rights and granting Brandi Sellers's, J. S.'s stepmother's, petition of adoption. For reasons that follow, we affirm.

> On appeal from an order severing a parent's rights to a child based on an adoption petition, this Court views the evidence in the light most favorable to the trial court's findings and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost.

Meeks v. Thompson, 277 Ga. App. 346 (626 SE2d 564) (2006).

So viewed, the evidence below was that the mother and father of J. S. were divorced when the child was approximately a year and a half old. In January 1999, when the boy was three and a half, the father became the primary physical custodian. The mother was ordered to pay $25 per week in child support. The mother testified that she paid from January to October 1999, and then stopped paying for two years. She claimed to have sent three checks to the father and stepmother during the last year, but said those were returned to her. The mother stated that she began receiving social security disability checks earlier that year. She said she also received a lump sum payment of $11,000 or $12,000 for back payments that accrued while her case was pending. The mother admitted that she did not use any of that lump sum payment for support for any of her children.[1] Nor did she ever send any of her monthly checks to pay for support for any of the children.

The mother acknowledged that at the time of the hearing on the adoption petition, she was in jail for violating probation. The mother

---

[1] The mother has three other children who are in the custody of her parents.

said she had "purposely gotten locked up" because she needed help with her crack cocaine problem. Nevertheless, she admitted that she failed to go to the drug rehabilitation program as ordered.

When asked about her problem with crack cocaine, the mother replied that she would always be an addict. She said if she were released from jail, she would just do something to get back in "to keep from smoking crack again." She described five different drug rehabilitation programs that she had been in during the last two years. The mother also testified that she was bipolar and was supposed to be taking medication for that condition.

There was also evidence of the mother's past relationships with men who were violent or used drugs. She said that one of these men had knocked out her car window while J. S. was in the car and another man had bitten J. S. In addition, there was evidence that the mother had been accused of criminal trespass and involved in several violent altercations. The mother admitted that she had a bad temper and had threatened the stepmother's life. As the mother testified: "I've been arrested a lot."

The father testified that J. S. had been living with him since October 1998. He said the mother called him and told him to come and get the child before she killed the child and herself. The father said that since then the mother has threatened to kidnap J. S., threatened the father's other children, called the stepmother at work and threatened her, and threatened to burn their house down.

The mother testified that the last time she saw J. S. was 15 months before the hearing. She said she tried to visit him at school a few months before she went to jail but was told she could not see him. The mother acknowledged that she was not asking for custody of J. S., but wanted "one day" to be able to have visitation with him.

There was also evidence that the mother signed over custody of her three younger children to her parents. The grandmother testified that the mother had never visited these children as often as she was allowed to and had never been to visit them since the grandparents obtained final custody.

At the time of the hearing, J. S. was eight years old and had been living with the father and stepmother for almost five years. There was testimony that J. S. calls his stepmother "mom," that he has bonded with his stepmother and his new family, is no longer close to his mother, and no longer asks about her.

After hearing the evidence, the trial court found that surrender of the mother's parental rights was not required as a prerequisite to the adoption because the mother, without justifiable cause, had failed to support the child for over one year prior to the petition and had visited the child only sporadically. The court also found that adoption

was in the best interest of the child because he had bonded with his stepmother and was doing well in his current home.

Although the mother contends that the trial court erred because there was not clear and convincing evidence that she failed to provide proper care and support for the child and failed to communicate with the child, the statute does not require a finding as to both these factors. This was an adoption proceeding under OCGA § 19-8-10 (b), which provides:

(b) Surrender of rights of a parent pursuant to subsection (a) of Code Section 19-8-6 or 19-8-7 shall not be required as a prerequisite to the filing of a petition for adoption of a child of that parent pursuant to Code Section 19-8-13, if that parent, for a period of one year or longer immediately prior to the filing of the petition for adoption, without justifiable cause, has significantly failed:

(1) To communicate or to make a bona fide attempt to communicate with that child in a meaningful, supportive, parental manner; or

(2) To provide for the care and support of that child as required by law or judicial decree, and the court is of the opinion that the adoption is for the best interests of that child.

Accordingly, this is a two-prong test under which the trial court must find that the mother, without justifiable cause, either significantly failed to communicate with the child *or* failed to provide support for the child, *and* that adoption is in the best interest of the child. Although the trial court found that the mother had failed to communicate with the child and also failed to support the child, this was not required under the statute.[2]

Accordingly, although all of the court's findings appear to be supported by clear and convincing evidence, we need only address whether there was sufficient clear and convincing evidence that the mother failed to provide for the child's support and that adoption was in the best interest of the child.

1. There was clear and convincing evidence to support the trial court's finding that the mother failed to pay child support for a period

---

[2] The trial court also found that "the mother is presently unfit and has failed to exercise proper parental care due to her misconduct." This appears to be a finding under OCGA § 19-8-10 (a) which was not required because the adoption petition was filed under OCGA § 19-8-10 (b); therefore, it is not material for purposes of this appeal.

of one year prior to the filing of the adoption petition. The mother argues that the court failed to consider justifiable reasons for not paying the child support; namely, that she was in jail or homeless for extended periods of time.

"[F]or purposes of determining the existence of 'justifiable cause,' . . . *incarceration is merely one relevant factor* to be considered by the trial court; *incarceration does not per se give rise to justifiable cause*, although in certain circumstances, justifiable cause can be shown to arise therefrom. Each case must be decided on its own circumstances." (Punctuation omitted.) *Griffith v. Brooks*, 216 Ga. App. 401, 404 (454 SE2d 602) (1995) (quoting *Jones v. Sauls*, 213 Ga. App. 55, 58 (443 SE2d 693) (1994)).

In this case, the evidence was that the mother had not sent any money for J. S.'s support for over two years. Although the mother was not working while in jail, she had started receiving over $500 a month from social security. In addition, she had received a lump sum payment of $11,000 or $12,000 and had not used any of this as support for her children. The mother contends that she sent three checks during the past year that were returned. This was not a significant attempt to provide support.

" 'In determining whether "significant" steps have been taken with regard to support . . . , "sporadic and de minimis" efforts do not require the court to find that there have been significant steps. (Cits.)' *In re J. S. J.*, 180 Ga. App. 873, 875 (3) (350 SE2d 843) (1986)." *Dubose v. Richardson*, 193 Ga. App. 104 (387 SE2d 156) (1989). The trial court did not err in concluding that there was clear and convincing evidence that the mother had significantly failed to provide for the support of J. S. for a period of more than one year.

2. Next, the mother argues that the trial court's decision to grant the adoption petition was not in the best interest of the child. The standard of review for this claim is "[i]f there is any evidence to support the trial court's finding that the adoption is in the child's best interest, such finding will be affirmed. Indeed, in this area the court has 'very broad discretion.' " (Footnotes omitted.) *Mellies v. Dearborn*, 253 Ga. App. 138, 139 (558 SE2d 460) (2001). "The same factors that show parental misconduct or inability can support a . . . court's finding that termination of parental rights is in the child's best interests." (Punctuation and footnote omitted.) *Rokowski v. Gilbert*, 275 Ga. App. 305, 310 (620 SE2d 509) (2005).

Here, there was evidence that the child had bonded with his stepmother, was doing well in the home with his father, stepmother and siblings, and was no longer attached to his mother. Moreover, the mother acknowledges that she does not want custody of J. S. She does

not contend that she wants to contribute to his support or have visitation at this time. She claims only that one day she wants to be able to have visitation.

The evidence discussed above, including the child's need for a secure and stable home environment, supports a finding that adoption is in the best interest of the child. See *Rokowski*, supra at 311. Compare *In the Interest of K. M.*, 240 Ga. App. 677, 680-681 (523 SE2d 640) (1999) (termination not in best interest of child because ten-year-old had a strong emotional attachment to her mother).

3. The mother also claims that the trial court erred in proceeding to trial without a clear explanation of her right to legal representation and without a clear waiver of that right. We disagree.

The record shows that before the start of the hearing on the petition for adoption, the mother stated, "I don't want this lady to adopt my son now. I just meant I'm ready to go ahead without an attorney. That's what I meant." During her opening statement, the mother again stated that she was "ready to proceed without an attorney" and that she was not on any medication at that time.

In addition, the record shows that when the petition for adoption was served on the mother on July 24, 2002, the mother was represented by counsel. It appears that the mother never communicated with her counsel, however, because on December 6, 2002, the mother's counsel filed a motion to withdraw, stating that he had not had any contact with the mother since February 2002.

Given that the mother had been represented by an attorney for several months after the petition was filed, did not object when the attorney was forced to withdraw because she would not communicate with him, never requested counsel or time to retain counsel, and clearly stated that she wished to proceed without an attorney, we conclude that there was a clear waiver of representation by counsel and the trial court did not err in proceeding with the adoption hearing.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED MARCH 1, 2006.

*Shaffer, Raymond & Dalton, Philip T. Raymond III, Susan D. Raymond*, for appellant.

*Westmoreland, Patterson, Moseley & Hinson, Roxanne M. Hinson*, for appellees.