659 S.E.2d 402 (2008)
In the Interest of M.J.P., a Child.
No. A07A2403.
Court of Appeals of Georgia.
March 7, 2008.
*403 Jana L. Evans, Dallas, for Appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Sr. Asst. Atty. Gen., Elizabeth M. Williamson, Asst. Atty. Gen., Joseph T. Justice, Jennifer Yorio Zimmerman, for Appellee.
PHIPPS, Judge.
This is an appeal from a May 15, 2007 order of the Juvenile Court of Paulding County terminating the parental rights of the father to his daughter M.J.P., born December 5, 2005. The father challenges the sufficiency of the evidence to support the court's decision. Finding the evidence sufficient, we affirm.
The Georgia Code sets forth a two-step process to be used in termination of parental rights cases. First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability."[1] Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm.[2] In determining whether the child is without proper parental care and control, the court considers, among other things, any conviction of the parent of a felony and imprisonment having a demonstrable negative effect on the quality of the parent-child relationship.[3] And when the child is not in the custody of the parent whose rights are at issue, the trial court must also consider whether the parent without justifiable cause failed significantly for a period of one year or longer (1) to develop and maintain a parental bond with the child in a meaningful, supportive, parental manner; (2) to provide for the care and support of the child; and (3) to comply with a court-ordered plan to reunite the child with the parent.[4] If the trial court, taking these things into consideration, finds that the four factors exist, then the court determines whether termination of parental rights is in the best interest of the child, "after considering the physical, mental, emotional, and moral condition and needs of the *404 child, . . . including the need for a secure and stable home."[5]
On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.[6]
M.J.P. was born out of wedlock, and she was removed from her mother the day after her birth because they both tested positive for cocaine at the hospital during her birth. The father appeared at an adjudicatory hearing in January 2006. He remained unmarried to the mother, said that he was unsure whether he was M.J.P.'s father, and stipulated that the child was deprived. The court entered an order finding M.J.P. deprived and awarding the Paulding County Department of Family and Children Services (DFCS) temporary custody.
DFCS developed a court-ordered case plan designed to reunite both parents with the child. The goals to be completed included obtaining substance abuse assessments and following recommendations, attending and successfully completing drug/alcohol treatment with licensed providers, submitting to random drug screens, attending and completing parenting classes, obtaining sources of income and support for the child, completing psychological evaluations and following all recommendations, and paying child support of $20 per month.
Although DFCS made special efforts to ensure that the father could see M.J.P. on a weekly basis, he missed many visits, failed to pursue paternity testing or file a petition to legitimate the child, and did not complete a drug and alcohol assessment. After becoming incarcerated in April 2006, he participated in a paternity test arranged by DFCS and it was effectively determined that he is M.J.P.'s biological father. In June 2006, he was so informed, and the mother, who had not taken any steps toward completion of her case plan goals, surrendered her parental rights to the child. Because the father failed to complete any of his case plan goals even though reasonable efforts had been made to provide services to him, DFCS developed a new plan with concurrent goals of either reunification or adoption. In February 2007, the father filed a petition to legitimate M.J.P. (which was granted) and DFCS petitioned for termination of parental rights. A joint hearing was held on both petitions in April 2007.
Testimony given by the father showed that he had been arrested on April 17, 2006, charged with and later convicted of sale of cocaine, and was serving a five-year sentence at the time of the hearing. He had also gone to prison in 1999 for trafficking in cocaine, was paroled in July 2004, and was then reincarcerated from May 2005 until November 2005 after being arrested for sale of cocaine while on parole. The father testified that during his most recent incarceration he had done everything possible to complete his case plan goals by taking substance abuse classes and by remaining drug free (as shown by the fact that he had tested negative on the one drug screen he had taken). Immediately prior to his incarceration, he had been living with Kayoma Walker with whom he has two young children. He testified (without supporting documentation) that he expected to be released from prison in January 2008, intends to resume living with Walker and their children, and plans to go to school to become an electrician.
Testimony given by DFCS workers at the termination hearing showed that M.J.P. had gone into foster care at birth. Shortly before the hearing, she was placed with one of the father's sisters, a single parent with two other children. A DFCS worker testified that M.J.P.'s aunt wants to adopt her and that her home has been approved for the adoption. Because M.J.P. was born addicted to cocaine, she has physical, mental, and *405 emotional health problems and potential developmental disabilities.
In its order terminating the father's parental rights to the child, the juvenile court determined that the father's felony conviction and imprisonment had a demonstrable negative effect on the quality of his relationship with M.J.P., and that he had significantly failed without justifiable cause for the year preceding the filing of the petition for termination of parental rights to develop and maintain a meaningful and supportive parental bond with her, to provide for her care and support, or to comply with the court-ordered plan designed to reunite him with her. The court thus found M.J.P. to be a deprived child. And after finding the existence of the remaining factors and determining that termination of the father's parental rights would be in the child's best interest, the court entered the order appealed.
The father challenges the juvenile court's determination that his failure to develop and maintain a parental bond with M.J.P., to support her, and to comply with the reunification case plans were "without justifiable cause." He argues that omissions on his part were justifiable in view of his incarceration and the fact that he did not know that he was M.J.P.'s father until after obtaining the results of the paternity test. He claims that, upon finding out that he was M.J.P.'s father after going to prison, he did everything he could to complete the case plan goals. He asserts that in view of the likelihood that he will soon be released from incarceration, return to the household of Walker and their two children, and resume his education, the court abused its discretion in determining that M.J.P.'s best interest will be served through her adoption by his single-parent sister rather than by uniting her with him, Walker, and their two children.
There is, however, evidence from which the juvenile court could find that, even without paternity testing, the father was reasonably certain he was the child's father. And as found by the court, the father was offered opportunities from December 15, 2005, until the April 18, 2006 date of his incarceration, to visit with M.J.P. every week but, during that time period, he spent a total of only six hours with her instead of using that window of opportunity to make progress on his case plan and bond with the child. The court was thus authorized to find that, notwithstanding the father's incarceration, he did not adequately explain his failure to make any positive efforts toward his case plan goals in the months preceding his incarceration.[7]
And although justifiable cause for failure to pay child support may be found in situations where the parent has been unable to earn income due to incarceration,[8] incarceration does not per se give rise to justifiable cause.[9] Evidence here authorized the court to find that even while in prison, the father had access to minimally remunerative employment through which he could have made some contribution to the child's support but failed to do so. A father's failure to provide for the support of his child, or even other children, is evidence that he is not an able parent.[10]
Although incarceration does not always compel the termination of parental rights, it can support termination if there are sufficient aggravating circumstances as where the parent's near-continuous incarceration during the life of the child is still in progress at the time of the termination hearing.[11] Here, evidence was presented showing that the father has been in and out of boot camp, county jail, and state prison since 1999; that, while not incarcerated, he failed to obtain any type of regular, gainful employment; and that his substantial failure to complete *406 his case plan goals impeded placement of M.J.P. into the household with him and Walker. Unquestionably, M.J.P.'s deprivation continues to cause her serious physical, mental, and emotional harm. Under all the circumstances, the court was authorized to find that her need for permanence of home and emotional stability will best be served by terminating the father's parental rights and placing M.J.P. with the relative who has been approved for adoption.[12]
Judgment affirmed.
JOHNSON, P.J., and MIKELL, J., concur.
NOTES
[1] OCGA § 15-11-94(a).
[2] OCGA § 15-11-94(b)(4)(A)(i)-(iv).
[3] OCGA § 15-11-94(b)(4)(B)(iii).
[4] OCGA § 15-11-94(b)(4)(C).
[5] OCGA § 15-11-94(a).
[6] In the Interest of C.R.G., 272 Ga.App. 161, 161-162, 611 S.E.2d 784 (2005) (citation omitted).
[7] See In the Interest of L.G., 273 Ga.App. 468, 473-474(2)(b), 615 S.E.2d 551 (2005).
[8] McCollum v. Jones, 274 Ga.App. 815, 821(3), 619 S.E.2d 313 (2005).
[9] Sellers v. Sellers, 277 Ga.App. 814, 817(1), 627 S.E.2d 882 (2006).
[10] See In the Interest of T.B., 267 Ga.App. 484, 487(1), 600 S.E.2d 432 (2004); In the Interest of T.C., 282 Ga.App. 659, 662(1), 639 S.E.2d 601 (2006).
[11] See In the Interest of C.N.S., 248 Ga.App. 84, 85, 545 S.E.2d 633 (2001); In the Interest of J.K., 239 Ga.App. 142, 145(1), 520 S.E.2d 19 (1999).
[12] See generally In the Interest of A.R.A.S., 278 Ga.App. 608, 615(2)(d), 629 S.E.2d 822 (2006) (in view of children's need for permanence of home and emotional stability, termination of parental rights warranted where evidence showed that there had been no bonding between parent and child and that foster parents capable of caring for her wanted to adopt her); In the Interest of D.L.S., 271 Ga.App. 311, 314(1)(c), 609 S.E.2d 666 (2005) (trial court, not appellate court, determines whether parent's conduct warrants hope of rehabilitation).