**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 15, 2012

# In the Court of Appeals of Georgia

A12A0366. BARR et al. v. GREGOR et al.                              AD-017

ADAMS, Judge.

Appellees Glenda Sue Gregor and Richard James Gregor, the paternal grandmother and paternal step-grandfather of H. M. S., filed a petition to adopt her after both her parents died. The trial court granted the petition and the appellants, who are relatives of the child, filed the present appeal.

H. M. S.'s father died in 2008 and her mother died in 2009.[1] Less than a week after her mother died, a juvenile court in Tennessee, where the mother and H. M. S. had lived, entered an interim order awarding physical custody to the Gregors. In December 2009, another juvenile court in Tennessee entered a "Permanent Caregiver

---

[1]H. M. S. was born September 27, 2005.

Plan Order" which awarded custody of the child to the Gregors and liberal visitation to appellant Laura Barr, who is the child's maternal aunt.[2]

In August 2010, the Gregors filed the present petition for adoption in the Superior Court of Hall County, the county of their residence. Barr and David Nichols (the child's maternal grandfather and Barr's father) filed a motion to intervene and a joint objection to the petition for adoption pursuant to OCGA § 19-8-15. The trial court granted the motion to intervene, but subsequently granted the petition for adoption over the intervener's objections, who then filed the present appeal.[3] After careful consideration, we now affirm.

1. Appellants first contend that the trial court did not have subject matter jurisdiction to modify the Tennessee Custody Order under the Georgia Uniform Child Custody Jurisdiction Enforcement Act, OCGA § 19-9-40. Although appellants note that adoptions are generally excluded from the UCCJEA, they urge that we nevertheless should apply the provisions here because of the effect of the adoption petition on the custody order rendered by the Tennessee Court. However, our

---

[2] At that time, Barr went by her maiden name Laura Nichols.

[3] The appellants have represented in this brief on appeal that Barr is the primary objecting party and that they do not challenge the trial court's decision denying Nichols' visitation.

legislature has specifically provided that the "[UCCJEA] does not govern an adoption proceeding . . ." OCGA § 19-9-42, and based on this provision our appellate courts have refused to extend the UCCJEA to adoption proceedings. *In re Adoption of D. J. F. M.*, 284 Ga. App. 420, 423 n.4 (643 SE2d 879) (2007); *Rokowski v. Gilbert*, 275 Ga. App. 305, 314 (7) (620 SE2d 509) (2005). Further, appellants do not cite us to any contrary authority in which our appellate courts have carved out an exception and applied the current version of the UCCJEA to divest the Georgia Court of subject matter jurisdiction over an adoption proceeding. "The applicable Code section, OCGA § 19-8-2, grants exclusive jurisdiction to superior courts in all adoption proceedings, and makes venue proper in the county in which the adopting parents reside." *Rokowski*, 275 Ga. App. at 314 (7). Thus, the trial court did not err by exercising jurisdiction in this case.[4]

2. Appellants further argue that the adoption was improper under the doctrine of collateral estoppel, and if the Gregors were dissatisfied with the Tennessee custody

---

[4]Although appellees argue that the appellants waived this argument by failing to assert it below, appellants correctly point out in their reply brief that subject matter jurisdiction cannot be waived. *Snyder v. Carter*, 276 Ga. App. 426, 427 (623 SE2d 241) (2005).

order, they should have sought modification of that order instead of petitioning to adopt H. M. S.

However, it does not appear that appellants argued this below; indeed, at the hearing appellants' attorney recognized that "the adoption case is separate than the custody case in Tennessee," and he agreed that the custody case and the adoption petition involved "two distinctively different issues." Although appellants did vehemently contend that Barr's rights under the custody order would be eviscerated by allowing the adoption to go forward and that the two cases could not be "separated," we do not think that this is the same as contending that collateral estoppel barred these proceedings. Based on the foregoing, we conclude the issue of collateral estoppel was not fully and fairly raised below and that, therefore, appellants cannot now assert that defense as a reason the trial court's order granting the petition should be reversed. See *In the Interest of B. A. S.*, 254 Ga. App. 430, 441 (8) (563 SE2d 141) (2002) (failure to raise estoppel issue below precludes appellate consideration); *Haygood v. Head*, 305 Ga. App. 375, 377-378 (1) (699 SE2d 588) (2010) (trial court erred by sua sponte dismissing claims based on collateral estoppel when that affirmative defense was not pled and proved below).

3. Appellants next contend that the trial court "abused its discretion in its application of law relative to the Child's best interest." Additionally, in their fourth enumeration, they contend the trial court erred by finding that the adoption was in the child's best interest.

We begin with our standard of review. In an adoption case, the trial judge sits as both judge and jury and is vested with a broad range of legal discretion. *Matherly v. Kinney*, 227 Ga. App. 302 (1) (489 SE2d 89) (1997). And because there are no surviving natural parents in this case, the trial court,

> armed with this discretion . . . must determine whether the 'petitioner is capable of assuming responsibility for the care, supervision, training, and education of the child, that the child is suitable for adoption in a private family home, and that the adoption requested is for the best interest of the child.' [OCGA § 19-8-18 (b)]. On appeal, we construe the evidence in a light most favorable to the court's judgment, and we will affirm a trial court's finding that the adoption is in the child's best interest if there is any evidence to support it.

*In the Interest of B. A. S.*, 254 Ga. App. at 444 (12). *Rokowski*, 275 Ga. App. 306 (2) ("(i)n matters of adoption the superior court has a very broad discretion which will

not be controlled by the appellate courts except in cases of plain abuse. . . ." (footnote citation omitted)).

At the hearing on the adoption petition, the appellants acknowledged that the Gregors are "fully capable of being good parents" to H. M. S. The trial court found overwhelming evidence that the Gregors were worthy and capable of caring for the child, a finding that is not challenged in this appeal. The trial court next considered whether it was in the best interest of the child for the adoption petition to be granted, and in doing so specifically utilized the factors listed in OCGA § 19-9-3, although the court recognized that these factors are listed in the statute governing custody between parents. Appellants now contend that the trial court erred by considering these factors, arguing that because the legislature intended that these factors apply in child custody proceedings between parents, it was reversible error for the trial court to utilize these factors in this case.

We do not believe, however, that the trial court abused its discretion by considering these factors under the facts of this case. First, the appellants made numerous references to the situation here being akin to a divorce where one parent lives out of state. Further, at the hearing on the adoption petition the appellants' attorney responded affirmatively when the trial judge asked if the court should

consider the "statutory" best interest guidelines, and the Gregors' attorney made specific reference to OCGA § 19-9-3 and framed part of her argument around those factors, without any objection from the appellants' attorney concerning the court's consideration of those factors. Further, appellants posed no objection when the trial court announced its decision in open court and noted specifically that it utilized OCGA § 19-9-3 in its analysis. Thus, under these circumstances, appellants will not now be heard to complain that the trial court considered these factors in deciding whether the adoption was in the child's best interest.

Further, we cannot say that the trial court erred by finding that the adoption was in the best interest of the child. Although the guardian ad litem recommended against the adoption, finding that in terms of the important factor of permanency, the child's situation here was not unlike that of a child of divorced parents where an out-of-state parent has visitation with the child, requiring the child to travel back and forth. But that is not the only aspect of "permanency" to be considered, as the trial court recognized by also noting the importance of continuity, stability and security that would come from allowing the Gregors to adopt H. M. S., weighing those factors against the loss of Barr's legal rights under the Tennessee custody order to visit with H. M. S. Indeed this was one of the guardian ad litem's main concerns and the

appellants' primary objection to the adoption--that the Gregors would not continue to allow H. M. S. to visit with her maternal relatives or that they would sharply curtail such visitation if they were not legally obligated to allow the visitation. But the trial court found no evidence to support this contention, and found instead that the Gregors had worked diligently to promote such visitation. The trial court also found that the "Gregors have applied themselves so as to promote or foster a positive relationship with all [H. M. S.'s] blood relatives, including, but not limited to, [the appellants]." Specifically, as to these issues, the Gregors testified that they believed it would be detrimental to H. M. S. to sever her relations with any member of her family, and that they had every intention of ensuring that the child remained in contact with all members of her extended family, unless such contact posed a danger to her safety or welfare. Indeed Barr confirmed during her testimony that the Gregors offered to allow her to visit with H. M. S. in their home during a time when her visitation rights had been temporarily suspended by the Tennessee court. Although the Gregors also testified that they would modify some aspects of the visitation as it existed under the Tennessee order, for example they would require Barr to come to their home for visits during the school year, excepting holidays and breaks when the child would be allowed to visit at Barr's home in Tennessee, they gave sound reasons for this

8

curtailment, citing the great distance the child had to travel in a short period, the disruption in her routine and that the child suffered behavior issues at home and at her pre-school after she would return to them, a fact also borne out by testimony from her teachers. The trial court agreed such curtailment would be in the child's best interest, noting that facts showed that the long distance visitation did have adverse consequences for the child.

In sum, having reviewed the trial court's lengthy and thorough order, as well as the evidence here, we cannot say, applying the applicable standard, that the trial court abused its discretion by granting the petition for adoption. *In the Interest of B. A. S.*, 254 Ga. App. at 444; *Matherly*, 227 Ga. App. at 303 (1).

4. Lastly, appellants contend that the trial court ruling creates bad public policy because out-of-state courts will not grant primary custody of an orphaned child to a relative that is a Georgia resident for fear that the custodian will seek to adopt the child and sever ties with the out-of-state relatives. However, we will not reverse the trial court's order based on mere speculation.

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*