A06A2255. IN THE INTEREST OF A. C. et al., children.
(642 SE2d 418)

PHIPPS, Judge.

The mother of A. C., K. C., and H. G. executed surrenders of her parental rights to all three children. Thereafter, in orders filed April 18, 2005, and April 20, 2005, the juvenile court returned custody of the children to their respective fathers. The mother filed an extraordinary motion for new trial seeking to set aside those orders because she claimed that the return of custody was done without notice to her and in violation of her due process rights. After conducting a hearing

---

on the motion, the juvenile court denied it. The mother claims that the juvenile court erred by finding that she had waived her right to notice of hearings where the issue for determination was the placement of A. C., K. C., and H. G. with relatives and by failing to strictly construe the surrender of parental rights form to apply only as a surrender of rights and waiver of notice as to an adoption. We conclude that the juvenile court did not err by denying the mother's motion and therefore affirm.

On February 12, 2004, the Cherokee County Department of Family and Children Services (DFACS) filed a deprivation petition with respect to A. C., K. C., H. G., and another child not involved in this case. The petition alleged that the mother had left her two-year-old twins with her thirteen-year-old son for approximately a week without returning to the home, that the mother used illegal drugs, and that the mother had stated that she was having a mental breakdown "and needed a few days to take a break." The children were removed from the home and placed with grandparents. After conducting hearings, the juvenile court adjudicated the children deprived as to the mother and directed DFACS to prepare a reunification plan. The court also adjudicated H. G. deprived as to her father and directed DFACS to prepare a reunification plan for him. The court noted that the father of A. C. and K. C. was incarcerated at that time.

On July 20, 2004, DFACS submitted a reunification plan containing certain goals to be completed by the mother and H. G.'s father. On September 22, 2004, the mother executed documents surrendering her parental rights. On January 26, 2005, DFACS filed another deprivation petition with respect to A. C. and K. C., which stated that their father had failed to maintain meaningful contact with them, that he had unstable housing and employment, and that he was currently on probation. At the adjudication hearing on that petition, the father of A. C. and K. C. stipulated that the children were deprived based on his unstable housing and employment and failure to maintain meaningful contact with the children, and the court adjudicated them deprived as to him. The juvenile court ordered that the father's case plan address these issues, but it does not appear that a plan was ever submitted for him.

On March 1, 2005, the juvenile court conducted a review hearing and ordered that the father of A. C. and K. C. be allowed unsupervised visitation. The court also ordered that H. G. be returned to her father's custody, pending a favorable home evaluation.[1] In both

---

[1] Although the hearing took place on March 1, the orders were signed on April 14, nunc pro tunc to March 1, and filed on April 18.

orders, the court noted that the mother was not present at the hearing and that she had surrendered her parental rights to DFACS. On April 20, 2005, the juvenile court ordered A. C. and K. C. returned to their father's custody, despite an objection by DFACS based on an incomplete home evaluation.

1. The mother claims that, as the children's mother, she was entitled to notice of the hearings pursuant to which the juvenile court returned custody of the children to their fathers. She argues that failing to provide her with such notice denied her the opportunity to present evidence as to why it was not in the best interests of the children to be placed in the custody of their respective fathers.

(a) Initially, she relies on *Sanchez v. Walker County Dept. of Family & Children Services*,[2] in which the court recognized that a parent is a "party" to proceedings involving his child. The court in *Sanchez* held that "[a] failure to comply with notice and hearing requirements of the juvenile code after an allegedly deprived child has been taken from the parent's custody does prejudice or injure the rights of the parent, primarily the right to possession of the child."[3]

The state counters that the mother abandoned all of her parental rights, specifically the right to possession of her children, when she voluntarily surrendered her parental rights to them. On September 22, 2004, the mother signed documents entitled "Surrender of Rights"/"Final Release for Adoption" and "Acknowledgment of Surrender of Rights." The Surrender of Rights/Final Release for Adoption form states:

> I, the undersigned, Mother of the aforesaid child do hereby surrender the child to the Georgia Department of Human Resources and promise not to interfere in the management of the child in any respect whatever; and, in consideration of the benefits guaranteed by the Georgia Department of Human Resources in thus providing for the child, I do relinquish all right, title, and claim to the child herein named, it being my wish, intent, and purpose to relinquish all parental control over the child. Furthermore, I hereby agree that the Georgia Department of Human Resources may seek for the child a legal adoption by such person or persons as may be chosen by the Georgia Department of Human Resources or its authorized agents, without further notice to me. I do, furthermore, expressly waive any other notice or service in any of the legal proceedings for the adoption of the child. . . .

---

[2] 237 Ga. 406 (229 SE2d 66) (1976).
[3] Id. at 410 (citations omitted).

> I understand I may only withdraw this surrender by giving written notice . . . within ten days from the date hereof.

The Acknowledgment provides that the signer has read the Surrender of Rights/Final Release for Adoption and understands that "this is a full, final and complete surrender, release and termination of all my rights to the child" and "that I have the unconditional right to revoke the surrender by giving written notice . . . not later than ten days from the date of the surrender and that after such ten day period, I shall have no right to revoke the surrender."

The language of the forms executed by the mother provided that she was absolutely surrendering her parental rights in, claim to, and control over her children and that she acknowledged that this was a full, complete and final release, surrender, and termination of her parental rights.[4] This language is inconsistent with a claim that she retained a right to possession of her children that entitled her to notice of proceedings regarding their custody. Moreover, after she executed the surrenders, the mother was no longer a "party" to proceedings involving the children.[5]

(b) Relying on *Dept. of Human Resources v. Cowan*,[6] the mother argues that because surrendering parental rights does not relieve a parent of the obligation to support her children, she therefore retains an interest in the outcome of proceedings related to their custody. *Cowan*, however, does not support the mother's argument.

In *Cowan*, the court rejected the father's argument that he was no longer responsible for paying child support after he executed a surrender of his parental rights and consent for adoption, although no adoption had occurred. However, the court recognized the distinction between parental power over a child and parental obligation to a child. While a parent can voluntarily contract to surrender her parental rights, a parent cannot contract away the obligation to support her children.[7] A court order is required to alter the statutory obligation of a parent to support her child.[8] "This may be accomplished, for instance, by an order terminating parental rights . . . or by a final order of adoption."[9]

2. The mother claims that the juvenile court failed to strictly construe the surrender of her parental rights.

---

[4] See *Lee v. Stringer*, 212 Ga. App. 401, 402 (1) (441 SE2d 861) (1994), overruled in part on other grounds, *In the Interest of B. G. D.*, 224 Ga. App. 124, 128 (2) (479 SE2d 439) (1996).

[5] See Division 2 (a), infra.

[6] 220 Ga. App. 230 (1) (469 SE2d 384) (1996).

[7] Id. at 231-232 (1).

[8] *Dept. of Human Resources v. Baker*, 222 Ga. App. 664, 665 (476 SE2d 41) (1996).

[9] Id. at 665-666 (citations omitted).

(a) The mother argues that the surrenders she signed waived only her right to notice of an adoption and not to notice of a hearing regarding returning custody of her children to their fathers and that she has a statutory right to such notice.

The Georgia statutes regarding juvenile proceedings recognize that the parent is a "party" to all proceedings involving his child.[10] "As parties to a deprivation hearing, parents are entitled to notice and an adequate opportunity to be heard."[11] Parents are also entitled to notice of a termination of parental rights hearing.[12] It seems logical that parents should also be entitled to notice of a review hearing held in a deprivation case involving their children.

That does not, however, entitle the mother to notice in this case. OCGA § 15-11-2 (10.2) defines "legal mother" as "the female who is the biological or adoptive mother of the child and who has not surrendered or had terminated her rights to the child." And "parent" is defined as "either the legal father or the legal mother of the child."[13] By surrendering her rights to the children, the mother is no longer considered their legal mother or parent, and therefore is not considered a "party" to all proceedings involving the children. Regardless of whether the specific language of the surrender of rights documents expressly waived notice of the review hearing, the effect of signing the documents was that notice of the hearing was not required to be given to her.

(b) The mother argues that the written surrenders of her parental rights expired and became invalid when DFACS did not pursue adoption.

The mother agreed that DFACS may seek for her children a legal adoption by persons chosen by DFACS, but there was no requirement that DFACS complete an adoption for the document to be valid. The mother's argument that the surrenders expired apparently is based on OCGA § 19-8-5 (k), which provides that an adoption petition must be filed within 60 days of a parent's written surrender of parental rights to a third party. However, the mother surrendered her parental rights to DFACS as provided for in OCGA § 19-8-4, and that statute does not have a time limitation for filing an adoption petition. Thus, the mother's surrenders of her parental rights did not expire.

When the mother surrendered her parental rights, she knew that the parental rights of the children's respective fathers had not been terminated and that there was a possibility they would obtain

[10] See *In the Interest of A. J.*, 269 Ga. App. 580, 581 (1) (604 SE2d 635) (2004).

[11] Id. (citation omitted).

[12] OCGA § 15-11-96.

[13] OCGA § 15-11-2 (10.3).

custody of the children. She cannot now invalidate her surrender because she does not agree with the court's decision to return the children to their respective fathers. Although the documents the mother executed specifically provided that she could withdraw her surrender within ten days, she makes no claim that she timely attempted to do so. Unless the surrender is invalidated by duress, fraud, or incapacity, a mother may not revoke her surrender after ten days.[14] The mother has presented no evidence of fraud, duress, or incapacity.

(c) The mother claims that she has not validly released her interest in her children. To support that claim, she relies on *Johnson v. Smith*,[15] in which the court refused to enforce an oral agreement for adoption. Although documents were prepared for the surrender of that mother's parental rights, those documents were never executed, and the court would not allow the adoption to proceed.[16] Here, because the mother did execute the documents required to surrender her parental rights, her reliance on *Johnson* is misplaced.

3. The mother claims that the juvenile court improperly referred to the surrenders of her parental rights in certain of its orders and that by doing so, it exceeded its jurisdiction. She apparently construes the orders as an attempt to terminate her parental rights in connection with an adoption proceeding, a matter which she claims is reserved to the jurisdiction of the superior court.

There are several reasons why the mother's claim lacks merit. First, this was not an adoption proceeding. Second, the orders do not attempt to terminate her parental rights. Finally, the juvenile court has concurrent jurisdiction over proceedings involving the termination of parental rights in connection with an adoption proceeding.[17]

*Judgment affirmed. Smith, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 27, 2007.

*Eric A. Ballinger*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Hope M. Pereira*, for appellee.

---

[14] *In the Interest of B. G. D.*, supra, 224 Ga. App. at 128-129 (2); see also OCGA § 19-8-9 (b) (after ten days, a surrender may not be withdrawn).

[15] 251 Ga. 1 (302 SE2d 542) (1983).

[16] Id. at 2-3 (2).

[17] OCGA § 15-11-28 (a) (2) (C).