A06A1936. In re Adoption of D. J. F. M., a child.

(643 SE2d 879)

Adams, Judge.

Petitioners V. F. M. and H. F. M. appeal from the trial court's denial of their petition to adopt D. J. F. M., their ten-year-old nephew from Honduras, who has been living in the United States for five years. D. J. F. M. has leukemia, and his mother brought him to America in February 2001 for treatment. He entered the United States with a valid nonimmigrant visa. In April of that year, the Douglas County Probate Court appointed his aunt, V. F. M., as his temporary guardian.[1] After his doctor recommended that D. J. F. M. remain in the United States for continued monitoring and treatment, his parents decided to relinquish their parental rights and allow the petitioners, V. F. M. and her husband H. F. M., to adopt the child.

The aunt and uncle filed a petition to adopt D. J. F. M. pursuant to OCGA § 19-8-7 (a), which governs the adoption of a child by a relative. The petitioners assert that they met the requirements of that statute, including voluntary surrenders by each parent. Nevertheless, the superior court applied OCGA § 19-8-8 to hold that it lacked the authority to grant the adoption. OCGA § 19-8-8 allows for the domestication of foreign adoption decrees, where the child has been granted a valid visa by the United States. The court stated that it applied this statute, rather than OCGA § 19-8-7, because it is the "only statement of the law in Georgia on the adoption of children from other nations."

In addition, the trial court took judicial notice of Honduran law, relying upon a United States State Department informational website addressing Honduran adoptions.[2] According to that website, Honduran law would not allow D. J. F. M.'s parents to surrender their parental rights because both parents are still living. Further, the trial court noted that D. J. F. M. had no valid visa, and petitioners had failed to comply with certain requirements established by the United States Bureau of Citizenship and Immigration Services in the Department of Homeland Security.

Nevertheless, the petitioners contend that the superior court had the authority to grant the adoption under OCGA § 19-8-7. They note that superior courts have jurisdiction in all matters of adoption, and venue is proper in the county where the petitioners reside. OCGA § 19-8-2. They assert that the child's citizenship and the parents' residency are irrelevant to the court's jurisdiction. They contend that the written surrender of rights signed by each parent terminated

---

[1] V. F. M. is the sister of D. J. F. M.'s father.

[2] See http://www.travel.state.gov/family/adoption/country/country_393.html.

their parental rights as a matter of law, and that Georgia has the innate ability to protect children, despite their immigration status. The petitioners also assert that OCGA § 19-8-8 should not apply because that section applies to cases in which adoptions occurred overseas and the parties wish to domesticate the adoption. They further note that the trial judge failed to consider the best interest of the child, particularly his health issues, in denying the adoption petition.

"[I]n matters of adoption the superior court has a very broad discretion which will not be controlled by the appellate courts except in cases of plain abuse. Thus, if there is any evidence to support the judgment entered in an adoption proceeding, it must be affirmed by this court." *Rokowski v. Gilbert*, 275 Ga. App. 305, 306 (620 SE2d 509) (2005). We find that it was a plain abuse of discretion for the trial court to apply the provisions of OCGA § 19-8-8 in this case. That statute is intended to govern adoptions "based upon certain foreign decrees," not to provide a general rule applicable to the adoption of children born in foreign countries. See Ga. L. 1990, p. 1572. The first requirement of the statute is an adoption "decree which has been entered pursuant to due process of law by a court of competent jurisdiction outside the United States." OCGA § 19-8-8 (1). Thus, by its own terms, the statute does not apply where petitioners seek a domestic adoption of a foreign-born child, and the trial court erred in attempting to hold the petitioners to its requirements.

Instead, the trial court should have applied the provisions of OCGA § 19-8-7, governing adoption by a child's relatives. That statute provides:

> Except as otherwise authorized in this Code section, a child who has any living parent or guardian may be adopted by a relative who is related by blood or marriage to the child as a grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, or sibling only if each such living parent and each such guardian has voluntarily and in writing surrendered to that relative and any spouse of such relative all of his or her rights to the child for the purpose of enabling that relative and any such spouse to adopt the child.

OCGA § 19-8-7 (a). The particular requirements for such an adoption are fully set out in OCGA § 19-8-13 (a) (5).

Nothing in the language of these statutes, or in the language of any of the other adoption statutes, restricts the Georgia adoption process to United States citizens. To be eligible to adopt, a person need only (1) be twenty-five years of age or married and living with a spouse; (2) be at least ten years older than the child; (3) have been a

bona fide resident of the state for six months prior to filing the petition; and (4) be financially, physically and mentally able to have permanent custody of the child. OCGA § 19-8-3 (a). A relative who meets these requirements is eligible to seek adoption under OCGA § 19-8-7. There is no statutory requirement, nor any appellate case that requires, that either the petitioners or the adopted child be United States citizens.

The fact that the child's natural parents reside in Honduras does not alter this analysis. We note that the trial court questioned whether it had personal jurisdiction over D. J. F. M.'s natural parents, because they never specifically submitted themselves to the court's jurisdiction. But each parent signed the requisite surrender of parental rights form, which provides that each parent is relinquishing his or her parental rights to D. J. F. M. in favor of the child's adoption by V. F. M. and H. F. M. The surrender form further states that the aunt and uncle may initiate the legal adoption of the child "without further notice to me. I do further waive any other notice or service in any of the legal proceedings for the adoption of the child."

And importantly, nothing in the adoption statutes requires that a parent who has surrendered his or her parental rights in this manner should be given notice of, or be made a party to, an adoption proceeding. In fact, under Georgia adoption provisions, natural parents who have surrendered their legal rights are no longer the "legal parents" of the child. OCGA § 19-8-1 (6), (7).[3] And in such a case, this Court has held that "[b]y surrendering [their] rights to the child[ ], [the parents are] no longer considered the[ ] legal . . . parent[s], and therefore [are] not considered a 'party' to all proceedings involving the child[ ]." *In the Interest of A. C.*, 283 Ga. App. 743, 747 (2) (a) (642 SE2d 418) (2007) (juvenile court hearing returning custody to natural fathers after mother surrendered rights). See also *In re Luallen*, 27 Ohio App.3d 29, 31 (499 NE2d 358) (1985) ("A parent who has executed a voluntary surrender of parental rights . . . is not a necessary party entitled to notice [when action effecting termination of parental rights] is filed. Reasonably and logically she is presumed to know the consequences of the surrender of her child.") (dependency proceeding, which has the effect of terminating parental rights under Ohio law). Thus, the issue of personal jurisdiction over D. J. F. M.'s natural parents does not arise.

And there was no reason for the trial court to have considered Honduran law in determining whether adoption should be granted in

---

[3] In addition, OCGA § 19-7-1 (b) provides "[p]arental power shall be lost by: (1) [v]oluntary contract releasing the right to a third person [or] (2) [c]onsent to the adoption of the child by a third person."

this case.[4] The petitioners have been Georgia residents for more than six months and they seek to adopt a child, who, even though born in Honduras, has resided in Georgia under the petitioners' legal custody for five years. The natural parents residing in Honduras have consented to the adoption by the Georgia petitioners and waived any further notice of any adoption proceedings. The petition was filed under Georgia adoption law. Under these circumstances, the laws of this state govern, and Honduran law has no application.[5]

Accordingly, the petitioners were required to meet the requirements for a relative adoption under OCGA § 19-8-7, and we remand to the trial court for a consideration of their petition under this standard. We note that they satisfied the jurisdictional and venue requirements of OCGA § 19-8-2 by filing the adoption petition in the superior court of their county of residence. And as the child's aunt and uncle, they are relatives eligible to adopt under OCGA § 19-8-7 (a). Also, the petitioners have provided the following documentation in support of their petition: (1) written voluntary surrenders signed by each parent before a notary in substantially the form and language required under OCGA §§ 19-8-7 (e), 19-8-13 (a) (5) (A) and 19-8-26 (e); (2) written acknowledgments of surrender in the requisite language under OCGA §§ 19-8-7 (f), 19-8-13 (a) (5) (B) and 19-8-26 (g); (3) the requisite mother's affidavit under OCGA §§ 19-8-7 (g), 19-8-13 (a) (5) (C) and 19-8-26 (h); (4) the affidavit of the petitioner's representative required under OCGA §§ 19-8-7 (h), 19-8-13 (a) (5) (C) and 19-8-26 (k); (5) copies of appropriate documentation as to guardianship of the child, the birth of the child, and the marriage of each petitioner under OCGA § 19-8-13 (a) (5) (E); and (6) a completed form containing background information regarding the child to be adopted required under OCGA § 19-8-13 (a) (5) (F). The petitioners further provided GBI fingerprint cards for themselves and a letter from D. J. F. M.'s doctor explaining the leukemia diagnosis and the child's need for continuing treatment in the United States. Moreover, in her affidavit the petitioner's counsel indicates that she personally spoke with the

---

[4] Neither the Uniform Child Custody Jurisdiction and Enforcement Act, OCGA § 19-9-40 et seq., nor the Interstate Compact on the Placement of Children, OCGA § 39-4-4, applies under the circumstances of this case. The UCCJEA does not apply to adoption proceedings. OCGA § 19-9-42; *Rokowski v. Gilbert*, 275 Ga. App. at 314 (7). And this case falls within an exception to the ICPC applicable where a child is brought into the receiving state by a relative such as a parent or aunt and is left with such relative. OCGA § 39-4-4, Article VIII, Limitations. D. J. F. M. was brought into the United States by his mother to stay with his aunt. See *Rokowski v. Gilbert*, 275 Ga. App. at 313 (4).

[5] As one commentator has noted, an adoption under these circumstances is not even considered an inter-country adoption. Stephen Lewin, *Adoption of Children from Outside of the United States*, Practicing Law Institute Order No. 7583, p. 492 (December 2005) (stating that where foreign-born child resides in New York, adoption should be commenced in New York state courts).

child's natural parents through an interpreter to ensure that they understood the terms of the surrender document in their native Spanish. The trial court should consider these factors in making the determinations required under OCGA § 19-8-18 (b), including the determination as to whether adoption by the petitioners is in D. J. F. M.'s best interest. See *Madison v. Barnett*, 268 Ga. App. 348, 350 (1) (601 SE2d 704) (2004) (overriding concern of the adoption statutes is the best interest of the child).

And as we have found that the child does not have to be a United States citizen to qualify for adoption under Georgia law, the issue of the child's immigration status is not before us. While petitioners' counsel acknowledged that the child does not currently possess a valid visa, the petitioners assert that they are seeking the adoption as part of their effort to obtain legal status for D. J. F. M. under federal immigration law. See 8 USC § 1101 (b) (1) (E).[6]

Accordingly, we find that the trial court erred in denying the petition for adoption of D. J. F. M., and we reverse and remand for reconsideration of the petition in accordance with this opinion.

*Judgment reversed and case remanded. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 22, 2007.

*Irene A. Steffas, Jerrold W. Hester*, for appellant.
*Claiborne, Outman & Surmay, James B. Outman*, amicus curiae.

---

[6] Children in D. J. F. M.'s position are often in " 'visa limbo' " while awaiting finalization of a United States adoption. Lewin, supra, at p. 492.