**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 15, 2013**

# In the Court of Appeals of Georgia

A13A0368. ONI v. ONI.

RAY, Judge.

Adedamola Olagoke Oni ("Dr. Oni") is the adoptive father of twins born to Cassondra Oni ("Ms. Oni").[1] The trial court granted Ms. Oni's motion to set aside the final decree of adoption, and Dr. Oni appeals. He alleges that the trial court erred in: (1) denying his motion to dismiss as untimely Ms. Oni's petition to set aside the adoption decree; (2) granting Ms. Oni's petition to set aside on its merits; and (3) removing custody of the children from him and granting temporary custody to Ms. Oni. Because we are constrained to agree that the trial court erred, we must reverse the judgment and remand the case.

---

[1] The parties are not married. Ms. Oni, previously Cassondra Tucker, took her name by petitioning for a name change.

Ms. Oni met Dr. Oni in 2009 when she went to his medical office in Chattanooga, Tennessee, where she received treatment. Shortly thereafter, he offered her a job which ultimately never materialized, but she began spending three or four days a week at his home in Roswell. The parties began a romantic and sexual relationship.

The parties discussed the possibility that Dr. Oni would adopt the twins, who were not his biological children. Ms. Oni and her then three-year-old twins moved into Dr. Oni's home on a permanent basis in April 2010. One month prior to that move, in March 2010, Ms. Oni and the twins' natural father had surrendered their parental rights to facilitate the twins' placement for adoption.

Ms. Oni signed a notarized, witnessed "Surrender of Rights Final Release for Adoption Notice to Parent or Guardian" which, inter alia, provided that she was "surrendering all of [her] right . . . to the children identified herein, so as to facilitate the children's placement for adoption," and that she agreed to "relinquish absolutely all parental control over the children." In this document, she also agreed that Dr. Oni "may initiate legal proceedings for the legal adoption of the children without further notice to me. I do, furthermore, expressly waive any other notice or service in any of the legal proceedings for the adoption of the children." She also signed a notarized,

2

witnessed "Acknowledgment of Surrender of Rights" which, inter alia, provided that she was executing a "full, final, and complete surrender, release, and termination of all of my rights to the children;" that she had an "unconditional right to revoke the surrender" within 10 days, and that after that time, she had "no right to revoke the surrender;" that all her questions regarding the effect of the surrender had been satisfactorily explained; that she had an opportunity to consult with an attorney prior to the execution of the surrender; and that she was voluntarily and intentionally surrendering her rights.

The attorney who handled the proceeding on behalf of Dr. Oni, Austin Buerlein, signed two notarized affidavits attesting that he explained the documents to Ms. Oni, explained that she had 10 days to revoke her consent, and explained that once the adoption occurred, it would be final. The record also contains a letter that Buerlein sent to the Georgia Department of Human Resources' State Adoption Unit, dated March 29, 2010, and copied to Ms. Oni. This letter states that it encloses Ms. Oni's surrender documents and that Dr. Oni "will be filing his Petition for Adoption in the Superior Court of Fulton County this week." A final decree of adoption was granted to Dr. Oni on August 24, 2010.[2]

---

[2] The decree was later amended to provide for a name change for the children.

Nearly a year after the adoption was finalized, Ms. Oni moved to set it aside, alleging in a verified petition that the final order was procured through fraud and duress. She alleged that Dr. Oni told her this would be an "open" adoption, and that she would live with him and the children until she and Dr. Oni married at some later date. She alleged that she was told that the relinquishment of rights she signed was "temporary." Ms. Oni, who completed her GED and has taken some college courses, acknowledged reading and signing the surrender of parental rights documents outlined above.

Dr. Oni testified that he did not tell Ms. Oni that they would have a relationship going forward, and while he acknowledged having a sexual relationship with her, he testified that she lived with him to help the children transition to his care. Dr. Oni did not disclose to the trial court his relationship with Ms. Oni or the parties' living arrangement prior to the entry of the adoption decree.

Ms. Oni alleged that between January and March 2011, she only saw the children for five minutes at a time because Dr. Oni kept the children from her and that she last saw the children on Mother's Day, May 8, 2011. In November 2011, Dr. Oni sent the children to live with his family in Africa, and Ms. Oni did not know where they were. They returned to the United States shortly before the hearing in this case.

In asserting fraud, Ms. Oni alleged that Dr. Oni lied to her and took steps to prevent her from discovering that the adoption had been finalized, and that she did not learn of the adoption until she attended a child support hearing against the biological father in a Tennessee court in May 2011. A November 16, 2010, e-mail in the record sent by Ms. Oni's mother to the law firm that employed adoption attorney Buerlein, however, stated that Dr. Oni was involved in a "scheme" to adopt her grandchildren and that Ms. Oni learned of the adoption when she called the Tennessee court about the biological father's child support hearing in October 2010. The e-mail mentioned appealing the adoption to both the Georgia and Tennessee courts. At the hearing in the instant case, however, Ms. Oni and her mother both testified that Ms. Oni did not know about the adoption until May 2011. Ms. Oni filed her motion to set aside the adoption on July 1, 2011. After a hearing, the trial court granted the motion and denied Dr. Oni's motion to dismiss. Dr. Oni appeals.

1. Dr. Oni alleges that the trial court erred in granting the motion to set aside the adoption because the action was time-barred. Because the language of the statute is unequivocal, we must agree.

OCGA § 19-8-18 (b) provides, in pertinent part, that the trial court shall enter a decree of adoption if it is satisfied that each living parent of the child has

5

surrendered all rights to the child in the manner provided by law prior to the filing of the adoption petition, that the adoptive parent was capable of assuming responsibility for the child, and that the adoption was in the child's best interest. Here, the trial court entered such a decree. OCGA § 19-8-18 (e) provides that "[a] decree of adoption issued pursuant to subsection (b) of this Code section shall not be subject to any judicial challenge filed more than six months after the date of entry of such decree."

Ms. Oni challenged the August 24, 2010, adoption decree on July 1, 2011, approximately 10 months after its entry. She argues on appeal that Dr. Oni committed fraud in concealing the adoption decree from her and that OCGA § 19-8-18 (e)'s six-month time bar in which to challenge an adoption should thus be tolled.

> In resolving this issue, we look to the literal language of the statute[], the rules of statutory construction and rules of reason and logic, the most important of which is to construe the statute[] so as to give effect to the legislature's intent. But as our Supreme Court has instructed, the search for legislative intent must begin with the words of the statute, and if those words are clear and unambiguous, the search also must end there. Put another way, when we consider the meaning of a statute, we must presume that the legislature meant what it said and said what it meant. We cannot substitute judicial interpretation language of our own for the clear, unambiguous language of the statute, so as to change the meaning.

6

(Punctuation and footnotes omitted.) *Collins v. Davis*, 318 Ga. App. 265, 268 (1) (733 SE2d 798) (2012). Without reaching the merits of Ms. Oni's fraud claim, we find unequivocal OCGA § 19-8-18 (e)'s provision that a decree of adoption as outlined above "shall not be subject to *any judicial challenge* filed more than six months after the date of entry." (Emphasis supplied). Ms. Oni's argument that this Court contemplated that fraud might toll OCGA § 19-8-18 (e)'s six-month bar in *Williams v. Williams*, 312 Ga. App. 47 (717 SE2d 553) (2011), is unavailing. The *Williams* decision did not reach the issue of tolling because the party in that adoption dispute had not alleged active deception preventing knowledge of or challenge to the adoption decree in the six months following the decree's entry. Id. at 48. *Williams* gives us no authority to circumvent the clear language of the statute. See also *Kirby v. Kirby*, 165 Ga. App. 163, 163 (300 SE2d 192) (1983) (in a case predating the enactment of OCGA § 19-8-18 (e)'s six-month bar, this Court refused to allow fraud to toll the three-year time limit in Code Ann. § 81A-160 (f), now OCGA § 9-11-60 (f), for moving to set aside a judgment granting an adoption decree).

Because the language of OCGA § 19-8-18 (e) brooks no exception, we reverse. In so doing, we render a purely procedural determination based on the dictates of the legislature, and such a decision raises the question of whether the legislature's intent

7

in enhancing stability for adopted children by enacting such a time bar deserves reconsideration to accommodate circumstances such as fraud and deception, as is alleged here. We make no determination as to whether other procedural avenues remain open to Ms. Oni under which she could seek custody, given the trial court's grant of temporary custody to her. We remand this case to the trial court for proceedings not inconsistent with this decision, necessarily leaving to the trial court's determination whether there are appropriate proceedings available to facilitate a transition of the children from Ms. Oni's care to Dr. Oni's care.

2. In light of our determination in Division 1, we need not reach Dr. Oni's other enumerations of error.

*Judgment reversed and case remanded with direction. Barnes, P. J. concurs specially, and Miller, J., concurs.*

A13A0368.  ONI v. ONI.

BARNES, Presiding Judge, concurring specially.

While I agree that the trial court must be reversed in this case, I do not agree with all that is said by the majority.[1] The majority holds that the six-month time bar imposed by OCGA § 19-8-18 (e) cannot be tolled by fraud, and with that much I agree. However, I write separately to point out that under certain limited circumstances, the doctrine of equitable estoppel might preclude a defendant from asserting OCGA § 19-8-18 (e) as a defense.

---

[1] Therefore, the majority opinion decides only the issues in this case and may not be cited as binding precedent.  See Court of Appeals Rule 33 (a).

In my view, OCGA § 19-8-18 (e) is best viewed as a statute of repose.[2]  A statute of repose, in contrast to a statute of limitation, "stands as an unyielding barrier to a plaintiff's right of action" and is "absolute."  (Citation omitted.)  *Simmons v. Sonyika*, 279 Ga. 378, 379 (614 SE2d 27) (2005).  Consequently, a statute of repose cannot be tolled for any reason, including fraud.  See id. at 380; *Balotin v. Simpson*, 286 Ga. App. 772, 773 (650 SE2d 253) (2007); *Hill v. Fordham*, 186 Ga. App. 354, 357-358 (2) (367 SE2d 128) (1988).  "This is so because tolling would deprive a defendant of the certainty of the repose deadline and thereby defeat the purpose of a statute of repose." (Punctuation and footnote omitted.)  *Balotin*, 286 Ga. App. at 773.

Significantly, "[n]otwithstanding this bright-line rule,"  the Supreme Court of Georgia and this Court have "found that, in certain narrow circumstances, a defendant may be equitably estopped from raising the statute of repose as a defense."  *Balotin*,

---

[2] Other statutes of repose have similarly prohibitive language.  Compare OCGA § 9-3-51 (a) ("(*No action to recover damages*[] . . . shall be brought against any person performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement more than eight years after substantial completion of such an improvement.") (emphasis supplied); OCGA § 9-3-71 (b) ("Notwithstanding subsection (a) of this Code section, *in no event may an action* for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred.") (emphasis supplied); OCGA § 9-3-73 (c) ("Notwithstanding subsections (a) and (b) of this Code section, *in no event may an action* for medical malpractice be brought  . . . .") (emphasis supplied).

286 Ga. App. at 773. See *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657, 659 (3) (437 SE2d 308) (1993); *Wilhelm v. Houston County*, 310 Ga. App. 506, 509 (1) (c) (713 SE2d 660) (2011); *Esener v. Kinsey*, 240 Ga. App. 21, 23 (522 SE2d 522) (1999); *Hill*, 186 Ga. App. at 358 (2). See also *Rosenberg v. Falling Water, Inc.*, 289 Ga. 57, 60-61 (709 SE2d 227) (2011) (discussing context in which doctrine of equitable estoppel can be applied with respect to statutes of repose). "[A]n equitable estoppel is based on the ground of promoting the equity and justice of the individual case by preventing a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth." (Citation omitted.) *Hollifield v. Monte Vista Biblical Gardens, Inc.*, 251 Ga. App. 124, 127 (1) (a) (553 SE2d 662) (2001).

Although fraud will not toll a statute of repose, "if the evidence of defendant's fraud or other conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit is found by the [trier of fact] to exist, then the defendant, under the doctrine of equitable estoppel, is estopped from raising the defense of the statute of ultimate repose." *Esener*, 240 Ga. App. at 23. See *Hill*, 186 Ga. App. at 358 (2). See also *Wilhelm*, 310 Ga. App. at 509 (1) (c) ("[A] defendant may be equitably

3

estopped from raising the defense of the statute of repose if the plaintiff reasonably relied on a fraudulent act or statement by the defendant that occurred after the plaintiff's injury accrued and, as a result of that fraud, the plaintiff did not file suit until after the repose period expired.") (emphasis omitted). However, "the plaintiff must have acted diligently for equitable estoppel to be available, after the fraud was first discovered or should have been discovered." *Esener*, 240 Ga. App. at 23.

Based on this precedent concerning equitable estoppel in the context of statutes of repose, I believe that a defendant may be equitably estopped from raising the defense of OCGA § 19-8-18 (e) if the plaintiff reasonably relied on a fraudulent act or statement by the defendant that occurred after entry of the adoption decree and, as a result of that fraud, the plaintiff did not file a motion to set aside the decree until after the six-month time period expired, so long as the plaintiff exercised due diligence after the fraud was first discovered or should have been discovered.[3] While

---

[3] Our decision in *Williams v. Williams*, 312 Ga. App. 47 (717 SE2d 553) (2011) did not use the term "equitable estoppel," but the decision contemplated that the six-month time bar imposed by OCGA § 19-8-18 (e) might not be invoked in cases of active deception by the defendant that prevented the plaintiff from learning of the adoption decree. See id. at 48 ("We note that April Williams did not allege that Jennifer Williams had engaged in any active deception during the six months following the entry of the adoption decree that prohibited April Williams from learning of that decree or bringing a challenge against it.").

4

the majority asserts that the plain and unequivocal language of OCGA § 19-8-18 (e) brooks no exceptions, other statutes of repose have similarly broad language precluding suit after a designated time period.[4] The language of OCGA § 19-8-18 (e) therefore is not so unique as to justify treating the statute differently from other statutes of repose. Accordingly, while the time bar imposed by OCGA § 19-8-18 (e) speaks in broad terms, I believe that the doctrine of equitable estoppel can still be applied if the circumstances warrant it.

Nevertheless, I must concur with the majority's decision to reverse the trial court in this case. The legal issue of equitable estoppel was neither raised nor ruled upon in the court below, and "[i]t is axiomatic that we will not resolve issues that were not raised and ruled upon by the trial court." *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 372 (5), n. 9 (724 SE2d 53) (2012). As we have explained,

"[t]o consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, 'He must stand or fall upon the position taken in the trial court.' Fairness to the trial court and to the parties demands

---

[4] See supra footnote 2.

5

that legal issues be asserted in the trial court." (Citation, punctuation, and footnote omitted.) *Safe Shield Workwear, LLC v. Shubee, Inc.*, 296 Ga. App. 498, 500 (2) (675 SE2d 249) (2009). For that reason, I concur in the judgment, but with the caveat that equitable estoppel might apply in a future case involving the application of OCGA § 19-8-18 (e). That question remains open for resolution at some later date.