**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 26, 2019**

# In the Court of Appeals of Georgia

A19A0711. ONI v. ONI.

BARNES, Presiding Judge.

Adedamola Alagoke Oni, M.D. (Dr. Oni) appeals from an order depriving him of custody of minor twins that he adopted after their biological mother, Cassondra Oni (Ms. Oni), surrendered her parental rights to the children. Because the trial court impermissibly relied upon its equity jurisdiction in ruling on the custody issue, we reverse the judgment and remand the case.

This is the third appearance of this case before this Court. The first two appearances are set out at *Oni v. Oni*, 323 Ga. App. 467 (746 SE2d 641) (2013) (physical precedent only) (hereinafter, *Oni I*), and *Oni v. Oni*, 336 Ga. App. 278 (784 SE2d 112) (2016) (hereinafter, *Oni II*). For purposes here, we recite the following background.

After meeting in 2009, Dr. Oni and Ms. Oni[1] began a [romantic] relationship. They discussed the possibility that Dr. Oni would adopt the twins, who were not his biological children. In April 2010, Ms. Oni and her then three-year-old twins moved into Dr. Oni's home. One month prior to that, in March 2010, Ms. Oni and the twins' natural father had surrendered their parental rights to facilitate the twins' placement for adoption. Notably, the surrender documents executed by Ms. Oni stated, inter alia, that she agreed that Dr. Oni "may initiate legal proceedings for the legal adoption of the children without further notice to me. I do, furthermore, expressly waive any other notice or service in any of the legal proceedings for the adoption of the children." A final decree of adoption was granted to Dr. Oni on August 24, 2010.

(Footnotes omitted.) *Oni II*, 336 Ga. App. 279, citing *Oni I*, 323 Ga. App. at 467-468.

Nearly a year later, and with the relationship between Dr. Oni and Ms. Oni having ended, Ms. Oni filed a motion on July 1, 2011 in Fulton County Superior Court to set aside the adoption. *Oni I*, 323 Ga. App. at 468-469. Dr. Oni countered that the motion to set aside the adoption decree was statutorily time-barred. Id. at 469 (1). The trial court rejected Dr. Oni's contention, and granted Ms. Oni's motion to set aside the adoption. Id. at 469. Also, the trial court granted temporary custody of the twins to Ms. Oni. Id. at 470 (1).

---

[1] "The parties [were] not married. Ms. Oni, previously Cassondra Tucker, took her name by petitioning for a name change." *Oni I*, 323 Ga. App. at 467, n. 1.

In *Oni I*, Dr. Oni contended that the trial court erred by granting Ms. Oni's motion to set aside the adoption and giving her temporary custody of the twins. *Oni I*, 323 Ga. App. at 467. After determining that the adoption decree had been entered pursuant to OCGA § 19-8-18 (b), *Oni I* recited that "OCGA § 19-8-18 (e) provide[d] that '[a] decree of adoption issued pursuant to subsection (b) of this Code section shall not be subject to any judicial challenge filed more than six months after the date of entry of such decree.'"[2] *Oni I*, 323 Ga. App. at 469 (1).[3] *Oni I* next calculated that Ms. Oni's challenge had been filed approximately ten months after entry of the adoption decree, then turned to Ms. Oni's argument that the statutory six-month period in which to challenge an adoption had been tolled by Dr. Oni's (alleged) fraud in concealing the adoption decree from her. Id. *Oni I* determined that "the language of the statute is unequivocal" and that "the language of OCGA § 19-8-18 (e) brooks

---

[2] In 2018, the General Assembly amended OCGA § 19-8-18 so as to, among other things, provide for newly added paragraphs of subsection (b) and to move the language recited above as codified at subsection (e) to newly added subsection (h). See Ga. L. 2018, p. 19, § 1-1. The amendment is not at issue in this appeal.

[3] See *Bates v. Bates*, 317 Ga. App. 339, 342 (730 SE2d 482) (2012) ("[T]he application of the time bar set out in OCGA § 19-8-18 (e) . . . presupposes that the adoption was one authorized by, and entered in accordance with, OCGA § 19-8-18 (b)."); *Williams v. Williams*, 312 Ga. App. 47 (717 SE2d 553) (2011) ("The adoption in this case was issued pursuant to [OCGA § 19-8-18 (b)], because it involved the surrender or termination of a biological parent's rights.").

3

no exception." *Oni I*, 323 Ga. App. at 470 (1). Accordingly, *Oni I* concluded that Ms. Oni's motion to set aside the adoption was time barred, reversed the contested judgment, and remanded the "case to the trial court for proceedings not inconsistent with [that] decision, necessarily leaving to the trial court's determination whether there [were] appropriate proceedings available to facilitate a transition of the children from Ms. Oni's care to Dr. Oni's care." *Oni I*, at 470 (1). Ms. Oni's petition for certiorari was denied by the Supreme Court of Georgia.[4]

After the remittitur was entered in the trial court, Ms. Oni filed, and the trial court granted, an amended motion to set aside the adoption. *Oni II*, 336 Ga. App. at 281. Subsequently, in *Oni II*, Dr. Oni contended that the trial court lacked authority to set aside the adoption decree, and we agreed. Id. at 282 (1) ("Right or wrong, [*Oni I*] was a final determination of the validity of the adoption decree, and conclusive of that question as between Dr. Oni and Ms. Oni.") (punctuation and footnote omitted). Therefore, *Oni II* reversed the judgment, and remanded the case with direction for the trial court to enter judgment in accordance with *Oni I*. As *Oni II* further espoused:

---

[4] See *Oni v. Oni*, Case No. S13C1837, 2014 Ga. LEXIS 46 (decided January 6, 2014) ("The Supreme Court today denied the petition for certiorari in this case. All the Justices concur.").

4

Where the trial court, after hearing a motion to set aside a prior order in a pending case vacates the judgment complained of, and on appeal the trial court's decision is reversed. . . , judgment of the appellate court is final. Upon the remittitur from the appellate court being filed in the trial court, the issue is res judicata, and the lower court has no authority to allow the movant to amend his motion. Nor can it hear further evidence or consider any other matter that would otherwise affect the finality of the judgment of this court. The only action which that court had authority or power to take was to make the judgment of [the appellate] court the judgment of the trial court and to enter an order overruling the motion to vacate.

*Oni II*, 336 Ga. App. at 282 (1), quoting *Shepherd v. Shepherd*, 243 Ga. 253, 254-255 (253 SE2d 696) (1979).

Upon the remittitur being filed in the trial court, Ms. Oni did not again seek to set aside the adoption. However, she initiated a separate action in the Fulton County Superior Court, filing on May 13, 2016 a "Petition to Establish Custody, Parenting Time, and Child Support and Other Relief." Ms. Oni asserted that she was the children's biological mother, that they had been in her custody nearly all their lives, and that they were then in her custody. Ms. Oni acknowledged that Dr. Oni had adopted the children in 2010, and recounted that she had unsuccessfully attempted to set aside the adoption. Ms. Oni alleged that the children had no relationship with Dr.

5

Oni, and that the children's few memories of him were negative. Ms. Oni claimed that she was a fit, capable, and qualified mother to the children and that it was in the children's best interest to remain with her. Thus, Ms. Oni sought to be awarded, among other things "sole physical and legal custody of the [c]hildren on a temporary and permanent basis."

Dr. Oni argued that Ms. Oni's petition was not viable for numerous reasons, including that Ms. Oni lacked standing because of her surrender of parental rights to the twins and his subsequent adoption of them; that Ms. Oni was thus not authorized to seek (as a third party) custodial rights against him (as the twins' parent); and that *Oni I* and *Oni II*, together with doctrines such as res judicata and collateral estoppel, foreclosed Ms. Oni's petition for custody.

The trial court consolidated the case initiated by Ms. Oni's custody petition with the case underlying *Oni I* and *Oni II*. And after conducting a hearing, the trial court entered the judgment contested in this appeal. Therein, the court described, "Legally, the Petitioner [Ms. Oni] is a stranger to the children, as she surrendered her parental rights to them in March 2010." The court further described, "While Respondent [Dr. Oni] is the legal parent, he is a virtual stranger to the children." The court found that "[r]emoving the[ ] children forever from the primary caregiver with

6

whom they formed a primary bond and returning them to live with a virtual stranger is likely to cause them significant immediate and possible long-term emotional harm." The trial court concluded that "[t]he harm and damage that would befall the children if they are taken from the primary caregiver whom they have known and lived with almost their entire lives . . . must be prevented." Discerning further the constitutional issues underlying the consolidated case, then determining that the case presented peculiar circumstances that "def[ied] the operation of the general rules of law," the trial court turned to its equity jurisdiction to award Ms. Oni "permanent custody" of the twins and to order Dr. Oni to "have no contact with them."

1. In several interrelated claims of error, Dr. Oni maintains that because Ms. Oni surrendered her parental rights to the twins and he subsequently adopted them,

the trial court erred by invoking equity as a basis to grant custody to Ms. Oni.[5] For reasons explained below, we agree.

"Parents[6] have a constitutional right under the United States and Georgia Constitutions to the care and custody of their children." *Clark v. Wade*, 273 Ga. 587, 596 (IV) (544 SE2d 99) (2001); see *In the Interest of M. F.*, 298 Ga. 138, 144-145 (780 SE2d 291) (2015) ("The presumption that children ordinarily belong in the care and custody of their parents is not merely a presumption of the statutory and common law, but it has roots in the fundamental constitutional rights of parents.").

> Although in most instances it will be found that the legal right of the parent and the interest of the child are the same, if through misconduct or other circumstances it appears that the case is exceptional, and that

---

[5] See generally *Blackmon v. Tenet Healthsystem Spalding*, 284 Ga. 369, 371 (667 SE2d 348) (2008) ("The constitutional and procedural concept of 'standing' falls under the broad rubric of 'jurisdiction' in the general sense, and in any event, a plaintiff with standing is a prerequisite for the existence of subject matter jurisdiction."); *Perdue v. Lake*, 282 Ga. 348, 348 (1), 349 (2) (a) (647 SE2d 6) (2007) ("As a general rule, standing must be determined at the time at which the plaintiff's complaint is filed in order to place an actual case or controversy within the purview of the court.") (citations and punctuation omitted); *Julian v. Brooks*, 269 Ga. 167, 168 (495 SE2d 569) (1998) (affirming dismissal of the action, where "appellants lack[ed] standing to invoke the equitable jurisdiction of the superior court").

[6] See *Hastings v. Hastings*, 291 Ga. 782, 784 (732 SE2d 272) (2012) ("[A]n adoptive parent stands on the same footing and has the same rights and obligations as a biological parent.").

8

the welfare of the child requires that it should be separated even from its parent, the parens patriae must protect the helpless and the innocent. . . . Thus, in certain circumstances, the legislature may enact statutes that permit a child's interest to prevail over a parent's constitutional right to custody.

(Punctuation and footnote omitted.) *Clark,* 273 Ga. at 596 (IV).

Georgia's General Assembly has enacted OCGA § 19-7-1 (b.1).[7] to govern custody disputes between parents and third parties.[8] That statutory provision survived

[7] OCGA § 19-7-1 (b.1) provides in full,
Notwithstanding subsections (a) and (b) of this Code section or any other law to the contrary, in any action involving the custody of a child between the parents or either parent and a third party limited to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent, parental power may be lost by the parent, parents, or any other person if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness. There shall be a rebuttable presumption that it is in the best interest of the child or children for custody to be awarded to the parent or parents of such child or children, but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child or children. The sole issue for determination in any such case shall be what is in the best interest of the child or children.

[8] We note that OCGA § 15-11-150 provides, "A DFCS employee, a law enforcement officer, or any person who has actual knowledge of the abuse, neglect, or abandonment of a child or is informed of the abuse, neglect, or abandonment of a child that he or she believes to be truthful may make a petition alleging dependency. Such petition shall not be accepted for filing unless the court or a person authorized by the court has determined and endorsed on the petition that the filing of the petition is in the best interests of the public and such child." But Ms. Oni does not assert, and the record does not show that this case fell within that Code provision. Notably, Ms.

10

constitutional scrutiny in *Clark*, 273 Ga. 587, wherein the Supreme Court of Georgia cited two of its aspects: "First, OCGA § 19-7-1 (b.1) expressly limits third parties who may seek custody to a specific list of the child's closest relatives, including an adoptive parent. Second, the statute defers to the fit parent's decision on custody by establishing a rebuttable presumption in favor of parental custody." *Clark*, 273 Ga. at 597 (IV).[9]

In its detailed order, the trial court correctly ascertained that Ms. Oni – having surrendered her parental rights to the twins in 2010 – did not fall within any category delineated by OCGA § 19-7-1 (b.1) at the time she filed her custody petition in 2016. Nevertheless granting Ms. Oni's petition for custody, the trial court hinged its ruling on OCGA § 23-1-3, which provides in full: "Equity jurisdiction is established and allowed for the protection and relief of parties where, from any peculiar circumstances, the operation of the general rules of law would be deficient in

---

Oni's custody petition was expressly filed "pursuant to OCGA § 19-9-3, § 19-6-15, § 19-7-1 (b) (1), § 13-3-44, § 24-14-29, § 23-2-51, and §13-3-1."

[9] *Clark* went on to uphold as constitutional the "best-interest-of-the-child" standard when applied to custody disputes between a parent and those third parties falling within the ambit of OCGA § 19-7-1 (b.1), by giving it a narrowing construction and enunciating a two-part test for employing that standard. *Clark*, 273 Ga. at 596-599 (IV, V).

11

protecting from anticipated wrong or relieving for injuries done." The trial court expressly reasoned in its order,

> [T]he only category within which this case fits at this time is that of third party non-relative against legal parent. The "third party non-relative" in this case is actually the natural mother who raised the children and never intended that they be taken away from her. That is what makes the "peculiar circumstances" of this case so compelling.

Thus concluding that "this case presents 'peculiar circumstances' that defy the operation of the general rules of law and that compel the Court to invoke its equity jurisdiction to prevent a legally cognizable wrong arising from such circumstances," the trial court "ORDERED that Petitioner [Ms.] Oni shall have permanent custody of the minor [twins], and . . . Dr. . . . Oni shall have no contact with them."

Without question, the superior court is vested with general equitable powers. See Ga. Const. Art. VI, § IV, Para. I; OCGA § 15-6-8 (2); see generally *Brown v. Liberty Oil & Refining Corp.*, 261 Ga. 214, 215-216 (2) (b) (403 SE2d 806) (1991). But as the Supreme Court of Georgia has held:

> [T]he first maxim of equity is that equity follows the law. Thus, a court of equity has no more right than a court of law to act on its own notion of what is right in a particular case. Where rights are defined and established by existing legal principles, they may not be changed or

12

unsettled in equity. Although equity does seek to do complete justice, it must do so within the parameters of the law.

(Citations and punctuation omitted.) *Dolinger v. Driver*, 269 Ga. 141, 143 (4) (498 SE2d 252) (1998).

Under well settled legal principles, when Ms. Oni's surrendered her parental rights to the twins,[10] she forfeited her custody rights to them. See *Bozeman v. Williams*, 248 Ga. 606, 607 (285 SE2d 9) (1981) (citing Code § 74-108 (a), now codified as OCGA § 19-7-1 (b)). And pursuant to well defined and established law, when Dr. Oni adopted the children, he gained the right to their custody.[11] See *Clark*,

---

[10] See *Oni I*, 323 Ga. App. at 467-468 (detailing Ms. Oni's surrender of the twins).

[11] Nothing in the contested judgment amounted to an adjudication that, through one of the ways recognized in OCGA §§ 19-7-1 and 19-7-4, or through unfitness, Dr. Oni had lost his right to custody. See generally *Bales v. Lowery*, 299 Ga. 200, 202 (787 SE2d 166) (2016) (reiterating in habeas corpus case that a trial court's discretion when ruling on child custody should be governed by the rules of law and exercised in favor of the party having prima facie legal right to custody, unless "such person has lost the right to custody through one of the ways recognized in OCGA §§ 19-7-1 and 19-7-4, or through unfitness") (citation and punctuation omitted); *Brooks v. Carson*, 194 Ga. App. 365, 368 (2) (390 SE2d 859) (1990) (reasoning that "if the law tolerates the natural concern of a relative of the child, it naturally abhors interference between parent and child by third parties who are no relation") (physical precedent only), overruled on other grounds, *Mayor & Aldermen of the City of Savannah v. Norman J. Bass Constr. Co.*, 264 Ga. 16, 17 (1) (441 SE2d 63) (1994).

13

273 Ga. at 596 (IV); see also *Hastings*, 291 Ga. at 782.[12] While OCGA § 19-7-1 (b.1)

provides for third parties to seek custody as against a parent, that statutory provision

"expressly limits third parties . . . to a specific list of the child's closet relatives."

*Clark*, 273 Ga. at 597 (IV). And Ms. Oni was not encompassed within that list when

she filed her custody petition. See generally *Stone v. Stone*, 297 Ga. 451, 454-455

(774 SE2d 681) (2015) ("[C]onstruing [OCGA § 19-7-1 (b.1)] as authorizing the

State to require a fit and capable parent to share custody of his child with anyone

except the child's other parent would raise significant constitutional concerns.");

*Walls v. Walls*, 278 Ga. 206, 207, n.3 (599 SE2d 173) (2004) ("Those third parties

[allowed to seek custody of a child] are 'limited to grandparent, great-grandparent,

aunt, uncle, great aunt, great uncle, sibling, or adoptive parent.'") (quoting OCGA §

19-7-1 (b.1)).

Consequently, Ms. Oni's petition for custody of the twins as against Dr. Oni

had no basis "within the parameters of the law." *Dolinger*, 269 Ga. at 143 (4); see *In*

---

[12] Accord OCGA § 19-8-1 (11) (A) defining "legal father" as a "male who has not surrendered or had terminated his rights to a child and who . . . [h]as legally adopted such child"), (12) (defining "legal mother" as the "female who is the biological or adoptive mother of a child and who has not surrendered or had terminated her rights to such child"), (15) defining "parent" as "either the legal father or the legal mother of a child").

14

*the Interest of A. C.*, 283 Ga. App. 743, 747 (2) (a) (642 SE2d 418) (2007) (explaining that after the biological mother executed surrenders to her children, she was no longer a party to proceedings involving the children); *Brooks*, 194 Ga. App. at 373 (2) (explaining that the third party who was not a relative of either parent did not, by virtue of having developed emotional ties with the child after obtaining physical custody of the child, acquire standing to petition for custody against the child's father). Equity jurisdiction, therefore, could not be invoked to vindicate rights that Ms. Oni did not have.[13] See *Wallace v. Wallace*, 301 Ga. 195, 199 (II) (800 SE2d 303) (2017) ("Equity does not permit a court to substitute its own notion of what is

---

[13] Compare, e.g., cases such as *Williford v. Brown*, 299 Ga. 15, 18 (3) (785 SE2d 864) (2016) (superior court correctly rejected request of adult child to exercise its powers as a court of equity to craft a remedy to provide her with unimpeded access to her elderly biological father, because no Georgia statute or case provided adult children any such right); *Dolinger*, 269 Ga. at 143 (4) (equity could not be used to force school officials to allow students to participate in graduation ceremony, where the students had no legal right to do so), and *Hopkins v. Virginia Highland Assoc.*, 247 Ga. App. 243, 249 (1) (541 SE2d 386) (2000) (equity could not be used to grant easement in sewer line, given established law that property is not burdened with easement when subsequent bona fide purchaser takes without notice of the easement),with *Brown v. Liberty Oil & Refining Corp.*, 261 Ga. 214, 215-216 (2) (403 SE2d 806) (1991) (concluding that the court's equitable powers were demanded to allow the decedent's children to proceed as claimants under the wrongful death statute, because the statute conferred exclusive standing upon the surviving spouse and further required the surviving spouse to share the proceeds with the decedent's children, yet the children/claimants had been abandoned by the surviving spouse).

right in a particular case for a determination of what the law demands."); *Williford*, 299 Ga. at 18 (3) (noting "equity's general reluctance to interfere in cases involving personal and domestic matters that do not also implicate the plaintiff's *legal* status of personal or property rights") (emphasis supplied); *Northlake Manor Condo. Assoc. v. Harvest Assets*, 345 Ga. App. 575, 583 (2) (812 SE2d 658) (2018) ("[E]quity is ancillary, not antagonistic, to the law and cannot be used to alter established legal rights[.]") (citation and punctuation omitted).

Given the foregoing constraints,[14] we must reverse the trial court's judgment, and remand this case for proceedings that are neither inconsistent with this case, nor inconsistent with our decisions in *Oni I* and *Oni II*. See generally *In the Interest of A. C.*, 283 Ga. App. at 745-748 (1) - (3) (rejecting biological mother's attempts to thwart the children's father from obtaining custody of the children, where she had executed a surrender of her parental rights to them);[15] *Brooks*, 194 Ga. App. at 367 (2)

---

[14] See generally *Sanchez v. Walker County Dept. of Family & Children Svcs.*, 237 Ga. 406, 411 (229 SE2d 266) (1976) (noting that the General Assembly has elaborately provided procedures for protecting children, and that it is the appellate court's duty to enforce adherence to the statutory provisions). And see generally n. 8 and n. 11, supra.

[15] Accord *In the Interest of T. D. C.*, 281 Ga. App. 517, 518 (636 SE2d 704 (2006) (deeming as waived the biological mother's contention that the trial court should have allowed her to withdraw her consent to the termination of her parental

16

(concluding that the third party who was not a relative of either parent did "not have a right to challenge the father's right to custody in favor of herself, or to do anything to promote her own interests and rights, for she has none").

2. We do not address Dr. Oni's remaining challenges to the custody award.[16]

*Judgment reversed and case remanded with direction. Mercier and Brown, JJ., concur.*

---

rights because she changed her mind about wanting her parental rights to be terminated).

[16] See generally Division 1, supra; *Spitz v. Holland*, 243 Ga. 9, 11 (252 SE2d 406) (1979) ("Since appellants have no standing to bring the habeas corpus proceeding, no question of custody was before the court[.]").